UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
BARCROFT MEDIA, LTD. et al.,                                            :
                                                                        :
                              Plaintiffs,                       :      16-CV-7634 (JMF)
                                                                        :
        -v-                                                             :      MEMORANDUM OPINION
                                                                        :            AND ORDER
COED MEDIA GROUP, LLC,                                                  :
                                                                        :
                              Defendant.                        :
                                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/10/2018

JESSE M. FURMAN, United States District Judge:

       In this action, familiarity with which is assumed, Barcroft Media, Ltd. and FameFlynet, Inc. brought copyright infringement claims against Coed Media Group, LLC ("CMG") relating to CMG's unauthorized use of Plaintiffs' copyrighted images on its websites (the "Lawsuit Images"). On November 2, 2017, following a bench trial, the Court issued an Opinion and Order ("Trial Opinion") finding CMG liable for copyright infringement. *See Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017). In the same Trial Opinion, the Court set a briefing schedule for Plaintiffs' motion for attorney's fees, but expressed skepticism that the Court would ultimately find a fee award to be warranted given the circumstances. *See id.* at *13. Now pending is Plaintiffs' motion for attorney's fees and costs. (Docket No. 59). For the reasons that follow, Plaintiffs' motion is denied.

       Section 505 of the Copyright Act authorizes the Court "in its discretion [to] allow the recovery of full costs" and to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Fee awards are not "automatic" or granted as "a matter of course," but rather are committed to the discretion of the court. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

1

533 (1994).  A fee award may be appropriate when it serves copyright law's ultimate purpose of "'enriching the general public through access to creative works'" by "encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (quoting *Fogerty*, 510 U.S. at 527).  Among the factors that inform a court's decision about whether to award attorney's fees are "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 1985 (alteration in original) (citing *Fogerty*, 510 U.S. at 534 n.19).  Although a district court should give "substantial weight to the objective reasonableness of the losing party's position" in determining whether attorney fees are appropriate, it "must also give due consideration to all other circumstances relevant to granting fees."  *Id.* at 1983.

Notwithstanding the foregoing, Plaintiffs cite several cases for the proposition that fees "are the rule rather than the exception and should be awarded routinely" in copyright cases. (Docket No. 60 ("Pls.' Mem."), at 10-11).  Most of those cases, however, are from outside the Second Circuit and arose in the context of default judgment proceedings, and thus are irrelevant here.  *See, e.g.*, *Bait Prods. PTY Ltd. v. Aguilar*, No. 13-CV-161 (GAP) (DAB), 2013 WL 5653357, at *5 (M.D. Fla. Oct. 15, 2013); *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003); *Broad. Music, Inc. v. Dano's Rest. Sys., Inc.*, 902 F. Supp. 224, 227 (M.D. Fla. 1995).  Plaintiffs do cite two Second Circuit cases holding that attorney's fees "are awarded to prevailing plaintiffs as a matter of course," *see Folio Impressions, Inc. v. Byer Calif.*, 937 F.2d 759, 767 (2d Cir. 1991); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 457 (2d Cir. 1989), but those cases were abrogated by the Supreme Court more than twenty years ago, *see Fogerty*, 510 U.S. at 533-35 (requiring that prevailing plaintiffs and

prevailing defendants be treated alike for purposes of Copyright Act attorney's fees determinations, and rejecting the argument that attorney's fees should be awarded "as a matter of course"). Given that Plaintiffs themselves cite *Fogerty* (and *Kirtsaeng*, which reaffirmed *Fogerty*'s holdings, *see* 136 S. Ct. at 1985), Plaintiffs' reliance on those cases is baffling and somewhat troubling.

Be that as it may, considering the totality of the circumstances, the Court declines to award attorney's fees and costs to Plaintiffs for several reasons. First, although this case was not ultimately a close one, CMG's defenses were not so frivolous or objectively unreasonable that no party "could see an opening . . . through which the argument[s] could be squeezed." *Small v. Implant Direct Mfg. LLC*, No. 06-CV-683 (NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014) (first alteration in original) (quoting *EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, No. 12-CV-1011 (JST), 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014)). CMG did not waste the Court's resources by disputing that it had used Plaintiffs' copyrighted images without prior authorization — arguments that would indeed have been frivolous. Instead, it focused the bulk of its attention on the defense of fair use, which turns on a fact-intensive, multifactor inquiry, *see* 17 U.S.C. § 107, that may well have made it difficult for CMG to assess over the course of the litigation its likelihood of success on the merits. Moreover, "[m]ere assertions that a party's arguments were without merit are generally unavailing; rather, courts are more likely to award fees where a party knew or willfully ignored evidence of his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court early in the litigation." *Small*, 2014 WL 5463621, at *3; *see also Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, No. 10-CV-4919 (JGK), 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013) ("[L]ack of success on the merits, without more,

does not establish that the non-prevailing party's position was objectively unreasonable."). Here, Plaintiffs themselves barely contend that CMG's defenses were objectively unreasonable, (*see* Pls.' Mem. 12-13; Docket No. 65 ("Pls.' Reply"), at 5-7), and the Court has no basis on which to conclude that CMG knew or willfully ignored evidence of the meritlessness of its claims. Instead, as CMG's Chief Executive Officer, Robert Coakley, explained in an affidavit, CMG believed in good faith that it had a valid fair use defense based in part on its recent success in asserting the defense in another case. (Docket No. 63 ("Coakley Aff.") ¶¶ 13-14). What is more, at the final pretrial conference CMG readily abandoned an argument that the Court found unpersuasive, (*see* Docket No. 64 ("Sholder Decl.") ¶ 41), and was apparently willing to relinquish its defenses altogether after the Court shared its view that Plaintiffs were likely to prevail on liability; by all accounts, CMG renewed its efforts at that point to settle the case, to no avail. (*See* Docket No. 61 ("Sanders Decl.") ¶¶ 29-30; Sholder Decl. ¶¶ 42-43).

Moreover, while "bad faith in the conduct of the litigation is a valid ground for an award of fees," *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 125 (2d Cir. 2001), the Court concludes that CMG did not exhibit bad faith here. In arguing otherwise, Plaintiffs point to a dispute among the parties about the existence of a list of images subject to a prior general release ("Mediation Images List"); CMG's counterclaim, which was predicated on its contention that the Lawsuit Images were covered by that earlier release and which was dismissed by joint stipulation; and CMG's failure to make a settlement offer until nine months into the litigation proceedings or to pursue settlement sufficiently "aggressively" for Plaintiffs' tastes. (Pls.' Mem. 2, 4-9). Such conduct, however, is unexceptional. CMG's pursuit of the Mediation Images List and filing of a related counterclaim are hardly abusive litigation tactics evincing improper motives. Instead, they reflect CMG's apparently good-faith belief that some of the Lawsuit

Images might have been covered by a prior agreement between related parties, (*see* Docket No. 62 ("Def.'s Mem."), at 3-6; Sholder Decl. ¶¶ 3-6, 8-15; *see also* Sholder Decl., Ex. 2, at 1, 3), an argument that CMG pressed in repeated requests for production and through a motion to compel, (*see* Docket No. 23). The Court has no reason to conclude that CMG did not truly believe that some of the Lawsuit Images might have been covered by the prior release or that it might have a meritorious counterclaim by virtue of the fact that entities related to the parties in this suit had previously settled infringement claims having to do with celebrity photographs.[1]

Finally, the failure to tender a sufficiently high settlement offer in Plaintiffs' view does not even remotely approach the kind of misbehavior that would be required to justify an award of fees. Notably, CMG's original settlement offer was within a few thousand dollars of the amount it was ultimately ordered by the Court to pay, indicating that CMG was seeking to settle in good faith. Moreover, Plaintiffs themselves do not point to a single settlement demand they made over the course of the litigation, and CMG indicates that Plaintiffs repeatedly ignored its offers rather than rejecting them or making counteroffers. (Coakley Aff. ¶ 11; Sholder Decl. ¶¶ 32-44; *see also* DTX 21 ¶¶ 36-38). That CMG maintained throughout the negotiations that it expected to prevail on its nonliability defense at trial, (*see* Pls.' Mem. 2, 7), is an unremarkable posture for a party to take in settlement discussions and hardly constitutes litigation misconduct.[2]

---

[1] Plaintiffs misrepresent the record in contending that "this Court issued an Order finding that there was no evidence to support" CMG's counterclaim. (Pls.' Mem. 2). The counterclaim was dismissed pursuant to a joint stipulation by the parties. (Docket No. 28). The Court expressed no view of the merits of CMG's counterclaim and only denied CMG's motion to compel production of documents pertaining to the prior release on the ground that "the Court cannot compel Plaintiffs to produce a document or materials that do not exist," based on Plaintiffs' representation that they did not possess the Mediation Images List. (Docket No. 25).

[2] It is worth noting that Plaintiffs themselves engaged in some troubling litigation tactics. First, in their boilerplate complaint, Plaintiffs included claims relating to images that they did not own or that were published by nonparties, (*see* Docket No. 1-1), and they took months to amend

Additionally, the Court is unpersuaded that principles of compensation and deterrence counsel in favor of an award of fees because "the cost of protecting the rights to [Plaintiffs' intellectual property] will likely exceed the expected recovery." (Pls.' Mem. 10). No doubt there are some cases in which attorney's fees would be warranted to compensate plaintiffs whose damages are not commensurate with the costs of litigation or to deter defendants from future misconduct. But in this case, the Court considered the need for compensation and deterrence in awarding statutory damages in an amount greatly exceeding any damages Plaintiffs were able to prove at trial. *See Barcroft*, 2017 WL 5032993, at *10-12. For each infringement, the Court awarded the greater of the statutory minimum or five times the reasonable licensing fee a bona fide licensee in CMG's position would have paid to use the Lawsuit Images. *See id* at *11-12*. Nor are fees needed to deter CMG's future infringement or pursuit of unmeritorious

---

the complaint to remove those images despite acknowledging that they were improperly included, (*see* Sholder Decl., Ex. 2, at 2; *see also* Docket No. 14-1; Docket No. 28). Second, Plaintiffs served perfunctory or nonresponsive discovery responses, (*see, e.g.*, Sholder Decl., Ex. 7, at 6-7, 15-16), and appear to have erroneously denied to both CMG and the Court that the Mediation Images List existed, (*see* Docket No. 24), only to provide it to CMG in advance of later settlement talks, (*see* Sholder Decl., Ex. 4). Third, Plaintiffs' pretrial memorandum was dedicated almost entirely to proving the validity of its copyrights and CMG's unauthorized use — even though those points were essentially conceded from the outset — and paid next to no attention to the core issues in the case, fair use and damages. (*See* Docket No. 37 ¶¶ 245-57). Fourth, Plaintiffs filed a borderline frivolous motion for spoliation sanctions. (Docket No. 51). Fifth, Plaintiffs forced CMG to incur the expense of preparing its witnesses and bringing those witnesses to trial by representing that they intended to cross-examine those witnesses, and then passed on asking them any questions. And finally, Plaintiffs failed almost entirely to support their inflated damages claims with documentation or witness testimony. Despite the multifactor analysis by which statutory damages are calculated in copyright infringement cases, *see Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010), Plaintiffs' only support for their requested damages were spreadsheets reflecting the licensing transactions for each Lawsuit Image, *see Barcroft*, 2017 WL 5032993, at *9. Plaintiffs did not call a single witness who was involved in negotiating their licensing agreements or with personal knowledge about the fees reflected on those spreadsheets. Instead, they called only a principal of the copyright tracking service that they employ to register their copyrights and track potential infringements; he had no involvement in, or personal knowledge of, the licensing of the Lawsuit Images. *See id.*

infringement defenses. As the Court noted in the Trial Opinion, upon receiving Plaintiffs' cease-and-desist letter (which addressed only some of the Lawsuit Images), CMG promptly took down all potentially infringing content from its websites and implemented mechanisms for preventing future infringement. *See id.* at \*10. Accordingly, principles of compensation and deterrence do not move the needle in Plaintiffs' favor. *See, e.g.*, *BWP Media USA, Inc. v. Mishka NYC LLC*, No. 13-CV-4435 (ENV) (LB), 2016 WL 8309676, at \*3 (E.D.N.Y. Dec. 28, 2016) (declining to award attorney's fees in part because the defendant "cooperated in ceasing any potentially infringing conduct upon being served with the lawsuit by immediately removing the photographs from its blog," and defendant "made its position clear from the start that it was a small business and it made multiple attempts to settle this matter"), *report and recommendation adopted sub nom. BWP Media USA Inc. v. Death Adders Inc.*, No. 13-CV-4435 (ENV) (LB), 2017 WL 880855 (E.D.N.Y. Mar. 3, 2017). That is not to say that compensation and deterrence are irrelevant considerations, but merely that they were already factored into the statutory damages calculation; to award fees on those bases would constitute a windfall to Plaintiffs and potentially overdeter CMG. *Cf. Love v. Kwitny*, 772 F. Supp. 1367, 1378 (S.D.N.Y. 1991) (Mukasey, J.) ("This denial of attorney's fees is not a matter of no harm, no foul; rather, no harm, no foul deserving of any greater penalty than a finding that a foul has been committed."), *aff'd*, 963 F.2d 1521 (2d Cir. 1992).

Finally, Plaintiffs' contention that an award of attorney's fees is appropriate here because it "would further the purpose of the Copyright Act, insofar as such an award encourages would-be plaintiffs to protect their statutory rights," (Pls.' Mem. 11-12), proves too much. Indeed, if accepted, that argument would call for fees and costs in any copyright infringement case in which the plaintiff prevailed. Plaintiffs offer no reasons *specific to this case* that a fee award

7

would serve the purposes of the Copyright Act. In fact, an award of fees here would serve the ultimate purposes of the Copyright Act only minimally. As discussed in the Trial Opinion, Plaintiffs' photographs — which are predominantly factual depictions of the lifestyle and fashion choices of celebrities and the subjects of human interest stories — exhibit only limited degrees of creativity, unlike fictional or transformational works that represent the "core" of the Copyright Act's protections. *See Barcroft*, 2017 WL 5032993, at *7; *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994).[3] Moreover, Plaintiffs apparently had, and acted on, a strong incentive to pursue this infringement claim: They rejected or ignored multiple settlement offers from CMG and do not appear to have provided CMG with any counteroffers to facilitate the prompt resolution of this matter. *See, e.g.*, *Mishka*, 2016 WL 8309676, at *4.

For the foregoing reasons, Plaintiffs' motion for attorney's fees and costs is DENIED. The Clerk of Court is directed to terminate Docket No. 59 and to close this case.

SO ORDERED.

Date: January 10, 2018
New York, New York

JESSE M. FURMAN
United States District Judge

---

[3] The Court is equally unconvinced by CMG's responsive argument that its own defense of this suit was "laudable" because "Plaintiffs and their lawyers sought to abuse the Copyright Act for pecuniary gain." (Docket No. 62, at 2). Pressing meritorious infringement claims does not constitute an "abuse" of the Copyright Act.